INGLE *v.* JONES.

1. Although by the statutes of Maryland which are in force in that part of the District of Columbia which makes the county of Washington, judgment against an administrator for his testator's debts should be entered only for assets as they shall come into his hands, still, a judgment in the ordinary form will not prevent the creditors filing a bill to charge the realty where the record shows that after such judgment the auditor of the court has, in pursuance of a reference by the court to him, found the personalty insufficient to pay the debt, and that recourse must be had to such realty.

2. The law governing there, makes the proceeding against the administrator and the heir, when the latter proceeding is necessary, entirely independent of each other. If it be necessary to resort to the realty to discharge debts, a proceeding against the heir must be instituted, and in that case, whatever has been done by the administrator is without effect, as to the property sought to be charged. A judgment against the administrator is not evidence against the heir, and the demand must be proved in all respects as if there had been no prior proceeding to effect its collection

3. When a will imposes on an executor, who is named, duties foreign to those which come within the scope of an executor's ordinary functions, such powers do not pass to an administrator unless it be clear that it was the intention of the testator to make him a donee of the power.

4. A mere administrator, not the donee of such a power, cannot plead the statute of limitations to defeat a suit brought on a judgment, by a creditor seeking to charge the realty with his debt.

5. The three months allowed by the 69th of the Rules in Equity, for the

---

* See Dean *v.* Madison, 7 Wisconsin, 688; Clark *v.* Janesville, 10 Id 136.—REP.

† Gelpcke *v.* Dubuque, 1 Wallace, 175.

taking of testimony, has reference to the taking of testimony by both parties; defendants as much as complainants. It is for the court below to decide whether further time shall be given or refused, and ordinarily the determination of the question would not be deemed a fit subject for review by this tribunal, though cases may occur of so flagrant a character that it would be its duty to interpose.

6. It refused to interpose, though the court below had been prompt in setting down a case for hearing, the case having been one by a complainant having a pretty plain right, from the enjoyment of which he was kept by a defendant in possession, who had been contesting the case for eighteen years with great pertinacity, and with the interposition of all kinds of technical objections.

7. The necessity of an order for the sale of real property to pay debts being clear, the court may direct an ascertainment of the *whole* amount of the testator's liabilities when the sale is confirmed. It is not indispensable that such ascertainment have been made before the sale was ordered.

APPEAL from the Supreme Court of the District of Columbia; the case being this:

By certain ancient statutes of Maryland, in force within the District,* it is enacted that in suits against an administrator he need not plead *plene administravit*, nor anything relative to assets; and that he shall not be burdened further than these have come to his hands; but that after verdict against the administrator, the court shall assess the *pro rata* which he ought to pay; and to do this the court is authorized "when the real debt or damages are ascertained (meaning by verdict or confession) to refer the matter to an auditor, to ascertain the sum *for which judgment shall be* given." In case the judgment shall be for a sum inferior to the real debt, it shall go on and say, "that the plaintiff is entitled to such further sum as the court shall hereafter assess on discovery of further assets in the hands of the defendant."

These statutes being in force—and the 69th of the Equity Rules set forth by this court for the governance of courts below in equity causes, prescribing that "three months, and no more, shall be allowed for the taking of testimony after the cause is at issue, unless the court or a judge thereof shall, upon special cause shown by either party, enlarge the

---

* Act of 1786, chapter 80, § i; act of 1798, chapter 101, subchapters 7, 8, §§ vii, viii, ix.

time"—Zephaniah Jones, a builder, entered in 1851 into a contract with Miss Ann R. Dermott for building her a large house in Washington; she agreeing to pay him $24,000 for his work; parts of the sum to be paid as the building advanced. The house was so far built as to be ready for delivery in May, 1852, and it was delivered to Miss Dermott accordingly; its yearly rental being subsequently estimated at from $7000 to $8000. Before the completion of things on either side, misunderstandings arose, and Miss Dermott refusing to pay the balance claimed by Jones, he sued her to recover it. The suit was earnestly contested; technical objections being raised wherever they could be set up. Jones obtained a verdict and judgment, but it was reversed here on objections of this kind. Being thus sent back he then obtained a second verdict and judgment, which was reversed on like grounds. Settlement of the claim was thus greatly protracted.

In the progress of the contest Miss Dermott departed this life, leaving debts; leaving the house which Jones had built and the ground on which it stood (her chief realty), some (not very considerable) personalty, and a will of a peculiar kind.

By this will she appointed eight executors, one of them being a certain John P. Ingle. The executors and their survivors, in the performance of the "powers, commissions, charges, functions, and duties," which she gave them along with "the exclusive care, management, and stewardship of her estate," were to have its entire management and control during an uncertain time named by her. They were to rent the real estate, and out of the rents and the personal estate, not otherwise disposed of, were to pay her funeral expenses, and her other debts, without regard to limitations of time, "if found according to *their best judgment really due in conscience;*" to pay several legacies, and to pay also an annuity, while their duties were executing, though after the execution accomplished, it was to be a charge on the estate; they were to pay all such debts of her brother, contracted by him in a place and within a time named, as they should,

" according to the best of their *judgments and discretions, deem due in conscience,* and no other debts or pretended debts of his contracting." They were authorized to sell certain lots in an old cemetery, and to buy others in a new one, and to build there a vault to receive her remains. The power was given to mortgage her real estate, if found necessary to pay debts. After the debts and legacies were all satisfied the entire estate was to be delivered over to twenty trustees, named in the will, one Stringfellow being the first named, to whom and their heirs it was devised for a charity described; a charity, however, which now was confessedly void, and which could not be enforced as against her heirs.

All the persons named as executors declined to act except one of them, John P. Ingle, already named. He, however, after taking letters and defending against Jones's suit, but not wholly settling the estate, died during the progress of the controversy; thus leaving no executor to the will. Miss Dermott had provided in that instrument that if the surviving executor should die while the trusts were yet executory, the execution of her will, &c., " shall *not* devolve upon the executor of such deceased executor, but upon such person or persons as the vestries of St. John and Trinity Churches* may elect to go on and complete this will in so far as the execution thereof is committed to my said executors, and that proper letters of administration with the will might be granted by the court or authority competent for the purpose, to the person or persons so elected." But the vestries of the two churches named by Miss Dermott did not elect any one in pursuance of her will to take his place, and the court in Washington competent for that purpose, acting under a statute† which authorized the appointment of such an administrator, but was silent as to the powers which such a representative of the decedent shall have, appointed one John H. Ingle, administrator *de bonis non,* with the will annexed.

Against this administrator *de bonis non,* &c., Jones finally,

---

\* Two Episcopal churches in Washington.

† Act of Maryland, 1798, chapter 101, subchapter 5, § 6, &c.

in 1865, and after fifteen years' prosecution of his suit, obtained a judgment. The record entry of it was " for $20,136, with interest from April 5th, 1852, with costs, to be levied of the goods and chattels which were of the said Ann Dermott at the time of her death, which have come, or at any time hereafter shall come, to the hands of the said John H. Ingle, to be administered, if such goods and chattels be sufficient to discharge said damages and costs and all other just claims against the same; and if not sufficient, then said damages and costs to be levied of said goods and chattels ratably with all other just claims against the same." The record proceeded:

" And, because it is unknown to the court here whether all or only such ratable part of said damages and costs ought to be so levied, it is referred to the auditor to inquire thereof, according to the statute in such case made and provided, and report accordingly."

The auditor reported that there were no assets in Ingle's hands which could be applied to payment of the debt. Jones thereupon filed a bill in equity in the court below—the bill to the decree on which the present appeal was taken—to subject the testator's real estate to the payment of the judgment. And the complainant alleging that Ingle, being administrator of the unadministered personalty only, had no concern with the realty, the court appointed a receiver, one *Wilson*, to take charge of it, and to receive the rents.

The bill thus now brought, made *Ingle administrator*, &c., and Hoe and several others, heirs-at-law of Miss Dermott, and Stringfellow with other trustees, parties defendant. The former denied the justice of the demand, and pleaded the statute of limitations. Hoe and some others filing their answers, confessed its validity, did not plead the statute, and agreed to the sale of the realty as prayed for. And against Stringfellow and the trustees the case went by default.

The cause was put at issue on the 6th of March, 1866. The 69th rule in equity, as already stated, allowed the par-

ties three months thereafter to take their testimony. The complainant began the taking of his on the 14th of that month. Between that time and the 23d, inclusive, he examined nine witnesses; the complainant's counsel, to whom notice had been given, appearing and cross-examining those of them whose testimony was the most important. An adjournment was ordered by the examiner, from the 23d of March until the 2d of June. A deposition relating to a formal matter was then taken, and the complainant's counsel announcing that he had closed the examination of witnesses on his part, the examiner on that day (four days yet remaining of the three months) sealed up the depositions and transmitted them to the court; no objection being at this time made by the defendants.

A side issue, made also about this time, must here be referred to. It has been mentioned that the answers of the heirs-at-law admitted the justice of Jones's claim, and assented to the granting of his prayer for satisfaction from the realty. On the 23d of May they filed a petition, setting forth that these answers were obtained from them by fraud practised upon them by an emissary of Jones, and asking leave to withdraw those answers, and to file answers *de novo.* The particulars-of the case were given by them. Jones answered, denying them; but the issue having been one of fact, there is nothing in it worthy of report, further than that the particular matter was set down for hearing on the 11th of June, and that on the 14th the court, refusing to allow the withdrawal prayed for, dismissed the petition asking it.

Returning now to the main case. Six days before this dismissal—that is to say, on the 11th of June, and still, therefore, before the three months for taking testimony had *completely* expired—the court set down the motion for publication of the testimony on the 8th of June, 1866, and on the same day set down the cause for hearing at the then term; the petition to take the answers off the file being still not passed on and pending. On the 10th of June, the defendants gave notice that they would take testimony on the 19th of the month, and filed objections against the case being

heard at the then term, and showing afterwards as cause that no sufficient opportunity had been allowed to them to take rebutting testimony, after the evidence in chief on the part of the complainant was closed on the 2d of June, and because none was allowed the defendants, heirs-at-law, to take evidence in support of the allegations of their petition, filed May 23d, for withdrawal of their answers. The court below, however, heard the case, and on the 3d of July, 1866, finding the amount due to the complainant, and that it was necessary to sell the real estate described in the bill to pay it, ordered the premises to be sold, and the proceeds to be held subject to the further order of the court. From this decree it was that Ingle now appealed.

*Messrs. R. J. and J. L. Brent and S. L. Phillips, for the appellant:*

1. By the old statutes of Maryland which regulate the subject, no judgment can be rendered against an administrator until it is judicially ascertained, on an auditor's report or otherwise, that there is, or is not, any assets in hand, and when this fact is ascertained, the judgment is entered and moulded accordingly. The true entry and form of making up of the record, in such a case as this was, is shown in Harris's Entries,* in which old and approved book of precedents, it will be seen that there is no entry even of an interlocutory judgment on a confession of the debt (or by analogy on a verdict establishing it), until the auditor's report is made. There was thus in law no judgment whatever on this verdict.

2. Did the administrator *de bonis non* with the will annexed, who sets up the illegality of the claim and also the statute of limitations, succeed to the trust estate vested in the executor, these trusts being yet unexecuted when that executor died? No doubt the testatrix contemplated the occurrence of two events, viz., the nomination by the vestries, and its ratification by the Orphans' Court. But she has failed

---

* Page 104.

to say what her intention was in case the Orphans' Court appointed a person, upon the *failure* of the vestries to *nominate*. Did she mean to let the great trusts of her will fail in this last case? Certainly not. We must therefore construe her will as containing two intents—first, a particular intent that her administrator should be named by the vestries; secondly, a *general intent*, that her administrator, however appointed, should be the trustee. If so, and both intents cannot be gratified, the rule is to construe the will upon the *cy-pres* doctrine, and sacrifice the particular intent, which in such case is construed as merely directory and not imperative. If this court takes that view, we are let into both defences. Of course, if our view is right, the appointment of a receiver was improper. [The counsel then went into these points.]

3. The answers of the heirs-at-law of Miss Dermott were obtained by contrivance and fraud, and should have been taken off the files, that they might answer *de novo*. [The counsel then argued this point.]

4. The court erred in ordering publication, and refusing to allow the defendants to take evidence on the merits. The complainant consumed the three months by his evidence in chief, and then announced it closed, and on the same day had it filed and moved for publication. The defendants in vain excepted, and prayed for an extension of time (under the 69th rule) to rebut the testimony taken; but the court below held that we were in fault for not taking testimony *pari passu* with the complainant. The action of the commissioner in closing and sealing the depositions, on the 2d oᶠ June, cut us out of four days of the three months during which we were entitled to take testimony; and even if we had served a notice *de novo* to take it, such had been the course of the other side that the time would have been too short for us. We were at any rate clearly entitled to keep the depositions open for four days to examine any witnesses we chose.

Then on the 5th of June, before the three months had expired, the court set down the motion for publication of the testimony on the 8th of June, 1866, and on the same day

the cause was set down for hearing by order of the court. The petition to take answers off *file* was still pending, and the defendants could not take evidence while pleadings were being perfected. If they had gone on to take it under those disputed answers, it would have prejudiced their petition to take them off the file. In addition, the defendants could not know what rebutting evidence to adduce until the complainant closed his case on the 2d of June, 1866.

This particular error of the court below was a great one, for it saps the foundations of justice, by paralyzing all attempts at defence.

5. The decree was erroneous on its face. Without any reference to the auditor to report what other debts than Jones's existed, it decrees the sale of the whole real estate; omitting to adjudicate the amount or insufficiency of the personal estate, so as to subject the realty to the payment of the deficiency for which it was only responsible.

*Messrs. Davidge and J. H. Bradley, contra.*

Mr. Justice SWAYNE delivered the opinion of the court.

This is an appeal in equity from the decree of the Supreme Court of the District of Columbia. The record is voluminous, and contains numerous exhibits, and much of detail, which we have not found it necessary to consider. The material facts lie within a narrow compass, and the questions presented for our determination are neither numerous nor difficult of solution. On the 22d of April, 1851, the testatrix and the appellee entered into a contract for the erection by the latter of a large building in the city of Washington. She was to pay for the structure the sum of $24,000; $5000 on the 1st of July, 1851; $5000 on the 1st of October following, provided certain parts of the building were then ready for occupation; and the remaining $14,000 on the 1st of January, 1860, with interest, as stipulated. The first instalment was duly paid. Nothing has been paid since. Possession of those parts of the building to be first completed was delivered in December, 1851, and of the residue in April,

1852. In May, 1852, Jones sued for the instalment due on the 1st of October, 1851, and recovered. The judgment was reversed by this court.* The declaration was then amended by withdrawing the special counts and enlarging the *ad quod damnum* to $40,000, and a verdict and judgment were recovered for $22,149, and interest. This judgment was also reversed.† The case was again tried, and a verdict and judgment were recovered for $20,136.23, with interest from the 5th of April, 1852. The auditor of the court was directed to ascertain the amount of assets in the hands of Ingle, the administrator, which could be applied in payment of the debt. He reported that there were no assets available for that purpose. Jones thereupon filed this bill to subject the real estate therein described to the payment of his demand.

It is insisted by the counsel for the appellants that the judgment is erroneous in form, and is, in fact, only interlocutory. This objection is well taken. According to the statutes of Maryland, which are in force in the county of Washington, the judgment, under the circumstances, should have been entered only for assets as they should thereafter come into the hands of the administrator. But this fact is immaterial. The case is governed by the local law. That law makes the proceeding against the administrator and the heir, when the latter proceeding is necessary, entirely independent of each other. The duties of the administrator are confined to the personal estate, and never extend beyond it. If that be insufficient to discharge the debts, and it be necessary to resort to the realty of the deceased for that purpose, a proceeding against the heir must be instituted. In that event, whatever has been done by the administrator is without effect, as to the property sought to be charged. A judgment against the administrator is not evidence against the heir. The demand must be proved in all respects as if there had been no prior proceeding to effect its collection,

---

* 23 Howard, 220.                          † 2 Wallace, 1.

and the statute of limitations may be pleaded with the same effect as if there had been no prior recovery against the personal representative.*

We have examined with care the proofs in the record of the complainant's demand as set forth in the bill, and are satisfied with the amount found by the decree. It could be productive of no good to vindicate this view of the subject, by entering into an analytical examination of the testimony. We are not unmindful of the length of time through which the complainant has been pursuing his remedy, nor of the verdicts which have been rendered in the trials at law. They were the results of vigorously contested litigation, after the most elaborate preparation of the case. Nor are we unmindful that the court below, in the case before us, came substantially to the same conclusion. Our judgment, however, has been formed upon grounds wholly apart from these considerations. If the question were *res integra* in this case, and now for the first time to be passed upon, we should have no difficulty in sustaining the decree. We think the full amount found by the court is justly due.

Ann R. Dermott, by her will, appointed eight executors, and clothed them with important powers and duties. They were to have the entire management and control of the estate during the uncertain time specified. They were to rent out the real estate. Out of the rents and the personal estate, not otherwise disposed of, they were to pay her debts, without regard to limitation of time; to pay her funeral expenses; several legacies, amounting in the aggregate to between $3000 and $4000; to pay an annuity of $400, while their duties were executory, after which it was to be a charge upon the estate; they were to pay, in their discretion, certain debts of her brother; they were to build a vault to receive her remains, and they were authorized to sell two cemetery lots. The power was given to mortgage, if found necessary to pay debts. After the debts and legacies were all satisfied, the entire estate was to be delivered over to twenty trustees,

---

* Statutes of Maryland of 1786 and 1798; Collinson *v.* Owens et al., 6 Gill & Johnson, 4; 8 Peters, 528.

named in the will, to whom and their heirs it was devised, to enable them to found and support a female orphan asylum. The beneficiaries were to be such destitute white orphans as the trustees, or any corporation which might succeed them, should select. The provision for this charity is admitted on both sides to be void. The statute of the 43d Elizabeth never was in force in Maryland. The trust resulted for the benefit of the heirs-at-law.*  All the persons named as executors declined to act, except one of them, John P. Ingle, who qualified, and took out letters testamentary. He died, whereupon the defendant, John H. Ingle, was appointed administrator, with the will annexed. The will provides, that if the surviving executor should die while the trusts are executory, their execution should devolve upon such person or persons as the vestries of St. John and Trinity Churches should elect to go on and complete their execution, so far as they were committed to the executors, and she desired that letters of administration, with the will annexed, or other competent authority, should be granted to the person or persons so elected. The vestries made no election. Letters were granted by the judge of probate to John H. Ingle, as if the will contained no such provision.

The question whether the administrator thus appointed could exercise any authority as to the real estate is deemed an important one by the counsel on both sides, and has been fully argued. The Maryland statutes which bear upon the subject provide for the appointment of an administrator *de bonis non*, with the will annexed, but are silent as to his powers. By the common law his duties are confined to the personal estate, unadministered by his predecessor. Whatever authority he may possess as to the real estate must be derived from the will. If not found there in express terms, or by necessary implication, it has no existence. Hence the test, in all such cases, is the intention of the testator. Many of the duties enjoined upon the executors were foreign to those which come within the scope of their ordinary func-

---

* Dashiell *v.* Attorney-General, 5 Harris & Johnson, 400; Same *v.* Same, 6 Id. 9; Wildeman *v.* The Mayor of Baltimore, 8 Maryland, 554.

tions. Such a power never passes by devolution to an administrator, unless it be clear that it was the intention of the testator that he should become the donee of the power, in place of the executor appointed by the will. If no provision be made by the will for such substitution, the power does not become extinguished, but the case falls within the category of those where a court of equity will not permit a trust to fail for the want of a trustee, but will appoint one, and clothe him with authority adequate to the duties to be discharged.* In the case under consideration it is clear the testatrix did not intend that any one not clothed with the sanctions she prescribed should be intrusted with any duty touching her estate. The administrator occupies the same relation to the realty as if he were administrator *de bonis non* without the will annexed, and the testatrix had died intestate. This disposes of the questions raised as to the statute of limitations. The administrator alone has interposed that defence. It cannot avail those who represent the real estate, and who are the only parties in interest in this proceeding.

It was proper for the court to appoint a receiver. Until this was done there was no one authorized to take charge of the property and receive the rents.

Upon looking carefully into the record we find no foundation for the imputation that the answers of the heirs-at-law were obtained by fraud or contrivance. It was within the discretion of the court to allow them to be taken off the files and the parties to answer *de novo,* or to overrule the application made for that purpose. We think this discretion was not abused.

It was strenuously insisted that the court erred in refusing further time to the defendants to take testimony. The earnestness with which the point was pressed has induced us to examine it with more care than we should otherwise have deemed necessary. The cause was put at issue on the 6th of March, 1866. The 69th rule in equity allowed the parties

---

* Egerton, Administrator, *v* Conklin, 25 Wendell, 233; De Peyster *v* Clendining, 8 Paige, 296; Dominick *v.* Michael, 4 Sandford, 402; Cole *v* Wade, 16 Vesey, 42; 1 Chance on Powers, 658, 681.

three months thereafter to take their testimony.  The complainant commenced taking his on the 14th of that month. Between that time and the 23d, inclusive, he examined nine witnesses.  Notice was given to the defendant's counsel. He appeared and cross-examined the witnesses so far as he chose to do so.  An adjournment was ordered by the examiner, from the 23d of March until the 2d of June.  A single deposition relating to a formal matter was then taken.  The examiner thereupon closed the testimony and returned it to the court.  It does not appear that the defendants made any objection to the adjournment, or manifested any desire to take testimony during the period of more than two months between the time of the adjournment and the time to which it extended.  The application for further time was heard and overruled by the court on the 8th of June.  The rule referred to provides that " three months, and no more, shall be allowed for the taking of testimony after the cause is at issue, unless the court or a judge thereof shall, upon special cause shown by either party, enlarge the time."  The three months are allowed for the taking of testimony by both parties.  The limitation applies as much to defendants as to complainants.  It is for the court or judge to decide whether further time shall be given or refused, and ordinarily the determination of the question would not be deemed a fit subject for review by this tribunal.  Cases may, however, occur of so flagrant a character that it would be our duty to correct the error.  In the case before us the complainant's testimony was substantially closed on the 23d of March. The defendants had from that time until the 6th of June to take testimony on their part in the regular way.  No reason is given why they neglected to do so.  Indeed they were bound to proceed as soon as the cause was at issue.  They had no right to wait until the complainant was through. They knew from the previous trials at law what his testimony would be.  If there was any surprise, and an extension of time was necessary, doubtless it would have been given.  The complainant was pursuing the residue of his compensation for the house he had built.  He had delivered

possession years before. The house was large and valuable. The proof is that it rented for from seven to eight thousand dollars per year. His expenditures had been large. He had received less than a quarter of the contract price, and nothing for his extra work. He had recovered two verdicts for the amount claimed. He had been engaged for more than fourteen years in a bitter and expensive litigation, in which every possible impediment had been thrown in his way. In the light of these facts we are not prepared to say that the court below erred in the ruling complained of.

There is no error apparent on the face of the decree. It finds the amount due to the complainant, and that it was necessary to sell the real estate described in the bill to pay it. It orders the premises to be sold in the manner prescribed, and the proceeds to be held subject to the further order of the court. The auditor had found and reported the deficiency of assets requisite to give the court jurisdiction and to entitle the complainant to the relief sought by his bill. The necessity of making the sale, if the complainant's demand was to be paid, was clear upon the proofs, and was not denied by the answers. The amount of the liabilities to be paid out of the proceeds might have been ascertained before the decree of sale was made, but that was not indispensable. It may as well be done when the sale is confirmed. The rights of all parties in respect to the fund can then be ascertained, and payment and distribution be ordered accordingly. It is not alleged that the premises were susceptible of division, or if they were, that it was not necessary to sell the whole. No such issue is made in the pleadings, and no such proof is found in the testimony.

It is now nearly eighteen years since the complainant commenced a suit to recover what has been adjudged to him in this case. The conflict has been flagrant ever since. The demand seems to us to be simple and just. We find no error in the record, and the decree of the court below is

AFFIRMED.