# WHITE v. JOYCE.

APPEAL FROM THE SUPREME COURT OF THE DISTRICT OF
COLUMBIA.

No. 103. Argued December 4, 5, 1894. — Decided May 6, 1895.

A bill in equity against the administratrix of a deceased partner in a firm,
which was dissolved in the lifetime of the deceased, is the proper remedy
for the surviving partner, seeking a settlement in the courts of the
District of Columbia, and alleging that on making it a sum would be
found due to him; and when it is further alleged that part of the assets
is real estate, standing in the name of the deceased, the widow and chil-
dren of the deceased are proper parties defendant.

A bill filed later by the same surviving partner, and called a supplemen-
tal bill, alleging that after a decree had been entered, ordering the
sale of the real estate, the trustees appointed to effect the sale had
been unable to sell it, and further alleging that the deceased had died
seized and possessed of certain real estate, and asking that a decree
should be made ordering its sale, is not a supplemental bill, but is
essentially a new proceeding, under the Maryland laws in force at the
time when the District of Columbia was ceded to the United States; in
which proceeding it was competent for the heirs to plead the statute of
limitations, and in which it was the duty of the court to give to the minor
children, defendants, coming into court and submitting their rights to its
protection, the benefit of that statute; but the widow and the adult son,
who had been guilty of laches, must be left by the court in the position
in which they had placed themselves.

On November 29, 1871, Andrew J. Joyce filed his bill of
complaint in the Supreme Court of the District of Columbia
against Mary White, administratrix of Patrick White, de-
ceased, and Francis P. White, Mary S. White, James R.
White, Lewis C. White, and Charles A. White, infants, and
Mary White, widow of the said Patrick White, stating that
the complainant and the defendants were residents of the
District of Columbia; that Patrick White died intestate in
March, 1871, leaving his widow, Mary White, and the said
infants his heirs at law, and leaving also another son, Robert E.
White, who had since died unmarried and without issue; and
that Mary White was appointed administratrix of Patrick

White.  The complainant averred that on or about June 1, 1858, he and Patrick White formed a partnership in the grocery business in the city of Washington, in pursuance of a written agreement entered into between them on that day, (a copy of the same being filed with the bill,) which was to continue for seven years.  It was agreed between the partners, the bill alleged, that Patrick White was to keep the books of the firm; that the firm name should be P. White & Co.; that the capital should be $3000, to be paid in by the partners in equal portions; that, as the complainant was engaged in other business, he should employ a competent person to represent him in the business of the said firm; that Patrick White should have entire charge of the business, keep proper accounts, and sign all checks, drafts, and notes having relation to the partnership business, and to none others; that Patrick White should give a full statement and account of the business and make a settlement with the complainant whenever required so to do.  It was alleged that the partners further agreed, as appeared by an instrument of writing filed with the bill, that neither member of the firm should endorse any note or sign any bond, mortgage, or other instrument by which either might become liable for the payment of any money.

The bill alleged that the partnership commenced on June 1, 1858, and that the complainant, with the consent of Patrick White, employed John J. Joyce to represent him in the business, and fully complied with all the said agreements; that after the expiration of the said seven years the partnership was continued for a further term of five years, by an agreement in writing which was filed with the bill; that the partnership terminated on June 1, 1870, except as to a settlement of the partnership affairs; that during the time the business was carried on no settlement thereof was ever made, or account thereof stated; that Patrick White undertook within that time to state such an account, but died before it was completed; that during the lifetime of Patrick White, and with his consent, the complainant employed two competent bookkeepers to make a statement of the effects and transactions of

.the firm for the use of the partners, but that, owing to the
death of Patrick White, they were compelled to cease their
work. The complainant stated that he had in his possession,
at the time of the filing of his bill of complaint, a number of
the books and papers of the partnership, which had been
delivered to him by Mary White since the death of her
husband, and he prayed that she might be required to pro-
duce, with her answer in the cause, all other books and papers
of the firm which might be in her possession. · He further
stated that he was informed and believed that the partnership
was indebted to various persons, but did not know who any
of them were, except one firm in Philadelphia.

The complainant then showed that Patrick White had
purchased a certain parcel of land in the city of Washington
to secure a debt due the firm, and that afterwards he and his·
wife, Mary White, executed a deed of one undivided moiety of
the said land to the complainant, his heirs and assigns; and
that in January, 1869, a debtor of the firm, on account of his
indebtedness, conveyed to the complainant and Patrick White,
(trading as P. White & Co.,) as tenants in common a certain
other parcel of land in the said city. He stated that the said
real estate was part of the assets of the partnership, and
should be sold to pay the firm's debts. He averred that since
the death of Patrick White he had collected the sum of $1000
due to the partnership, for which he was ready to account,
and·stated that he would endeavor to collect all other debts
due to the same. He prayed that the defendant Mary White
might discover if she had collected any debts due to the
firm, and, if so, from whom collected, and the amounts
thereof. Finally, the complainant alleged that the said real
estate, of one undivided moiety of which Patrick White died
· seized, was not susceptible of partition among the heirs at
law of Patrick White, and that it would be to the interest
and advantage of the complainant and the defendants that the
same be sold and the proceeds thereof first applied to the pay-
ment of the partnership debts, and the balance, if any, distrib-
uted among the parties to the cause.

The complainant prayed that the cause might be referred

to the auditor of the court to state an account of all the effects and transactions of the firm ; that the complainant might have the right to surcharge and falsify, if need be, the books, accounts, and vouchers of the business; that the complainant might have paid to him any money found to be due to him ; that an account might be taken from the commencement to the end of the partnership; that the auditor might have power to advertise for all creditors of the firm to appear before him and prove their claims, and that the complainant might have the right to deny and plead to the same; that the said real estate might be sold and the proceeds thereof applied to the payment of the partnership debts, and that after the payment thereof any of the proceeds remaining might be distributed among the parties to the cause according to their respective rights; and that, on a final settlement of the partnership account, the complainant might have whatever should be found to be due to him charged against the estate of Patrick White.

On December 23, 1871, the court appointed James White guardian *ad litem* of the infant defendants, and he filed an answer on January 5, 1872, signed by himself in person, submitting the rights of the infants to the protection of the court, and stating that he could not admit or deny the allegations of the bill.

On January 3, 1872, R. T. Merrick, Esq., entered his appearance for the defendants in the cause.

Mary White filed her answer as administratrix on January 30, 1872, admitting that Patrick White died intestate, and that she was duly appointed administratrix of his personal estate, and had entered upon the duties of her office. She averred that she knew nothing of the matters set out in the bill relating to the said partnership, and that she had no books or papers of the firm in her possession, except two papers which she filed with her answer, and which she believed to be of no value. She admitted the allegations of the bill with regard to the said real estate, and that it constituted assets of the partnership, and stated that she was willing that the property should be sold, but that she did not admit that a sale of the

same was necessary for the payment of the said debts. She averred that she had not collected any debt or claim due to the firm of P. White & Co. on account of the partnership business. She stated that she did not know whether the said real estate was or was not susceptible of partition, or whether it would or would not be to the advantage of all the parties that the same be sold. As to all the matters set out in the bill, of which the defendant stated herself to be in ignorance, she called upon the complainant to make proof. Finally, she prayed to have the benefit of the statute of limitations with regard to the partnership affairs which were carried on under the first agreement alleged to have been entered into by the complainant and Patrick White, by the terms of which the partnership existing thereunder terminated on June 1, 1865.

Issue was joined on February 20, 1872, and the court entered an order on May 7, 1872, with the consent of the solicitors for Mary White and for the guardian *ad litem*, referring the cause to the auditor to state an account of the property and transactions of the partnership, and an account of what might be found to have been due from one partner to the other at the dissolution of the partnership which existed from June 1, 1865, to June, 1870, reserving to the defendants the benefit of the statute of limitations, if the plea thereof should be valid in the premises as a defence. It was ordered that the auditor advertise for the creditors of the firm to appear before him and prove their claims; that the right be reserved to the defendants and the complainant to deny the same or plead to them; that the auditor state an account of all debts and claims against the partnership; that he have leave to employ such competent persons as might be agreed upon by the parties to the cause to assist him; that the complainant have the right to surcharge and falsify, if need be, the books, accounts, etc., kept by Patrick White; and that the auditor take the depositions of all witnesses produced before him in reference to the partnership affairs, and file such depositions with his report.

By consent of the solicitors for the defendants, John F. Hanna and Thomas J. Myers were, on July 9, 1872, appointed

special auditors to assist the auditor in the cause, and to take testimony, and afterwards, on December 5, 1873, by consent as aforesaid, John F. Riley was substituted in the place of John F. Hanna, who was absent from the city. The special auditors proceeded to examine the books, vouchers etc., of the partnership, and to take testimony, and on June 18, 1875, their report was filed, signed (the solicitors for defendants consenting) by John F. Hanna as special auditor, and by Walter S. Cox, auditor of the court. The report showed that the estate of Patrick White was indebted to the complainant in the sum of $1937.90, with interest from June 1, 1870, and to Robert White, a brother of Patrick White, in the sum of $294.23. It further appeared thereby that there was due to the said firm from the firm of Joyce & Fisher, one of the members of which was the aforesaid John J. Joyce, the sum of $1789.18 on notes, and the sum of $199.88 upon open account.

The cause was heard upon bill, answers, exhibits, proofs and auditors' report, and a decree, consented to by the solicitors for defendants, was entered on September 9, 1875, confirming the said report, and adjudging that Mary White, administratrix, was indebted to the complainant and to Robert White in the amounts aforesaid. It was decreed that, it appearing to the court that there were not sufficient assets to pay the complainant and Robert White, the partnership real estate be sold.

On July 12, 1876, the complainant filed a petition setting out that after the ratification of the auditors' report it had been found that a payment of $1523.25, made to the firm of P. White & Co. by John J. Joyce, had not been credited to him; that this error could not have been discovered from the books alone, but was made to appear by explanations of certain items; and that the auditors had since become satisfied that, in justice to the estate of John J. Joyce, deceased, this error and others should be corrected. The complainant prayed that the order confirming the report might be set aside and the cause again be referred to the auditors, with proper directions.

The report was vacated on July 12, 1876, and the cause sent

back to the auditors with directions to restate the account, and to make such corrections therein as might be necessary. The alleged error pointed out in the petition was corrected in a second report filed by the auditors on February 13, 1877, which showed that the amount due from the estate of Patrick White to the complainant was $2706.98, with interest from June 1, 1870. A decree ratifying the second report, and again directing a sale of the partnership real estate, was entered on May 29, 1877, by consent of the defendant's solicitors.

On motion of the complainant, and with the consent of the solicitors for the defendants, leave was granted him on May 24, 1882, to file a supplemental and amended bill. A bill styled by him a supplemental bill was filed on the same day, in which he set out the proceedings above mentioned, and stated that since the time of filing of the original bill one of the defendants, who was at that time an infant, had reached the age of twenty-one years. The complainant averred that the trustees appointed to sell the said real estate had, after advertising a sale and taking due steps to effect the same, been unable to get a bid for either of the pieces of property. He stated that one of the said parcels was purchased by Patrick White for the sum of $572.72, at a sale made in pursuance of a decree entered in a suit brought by the firm against one of its creditors, and that the other parcel had been conveyed to the partners by another creditor, in payment of a debt of about $800. The complainant then set out the descriptions of five certain parcels or lots of land in the city of Washington of which Patrick White died seized. He alleged that Patrick White died intestate, leaving the said Mary White as his widow and the other defendants as his only heirs at law; that Patrick White did not leave sufficient personal estate to pay all debts and claims against him; that on September 24, 1872, Mary White filed her account as administratrix, showing that after paying all the debts filed against the said estate there was left the sum of $1321.96; that this amount was distributed by the court to Mary White as the widow of Patrick White and as the guardian of her infant children, and had all been expended in the education of her children and in supporting herself and

them; and that at the time of the said distribution the complainant's claim against Patrick White's estate had not been ascertained by a decree of the court. The complainant prayed that Mary White, as administratrix, and in her own right, might answer the supplemental bill; that a guardian *ad litem* might be appointed for the infant defendants; that the said real estate of which Patrick White died seized, or as much thereof as might be necessary to pay the complainant the amount due him, might be sold.

Andrew J. Joyce died on June 8, 1882. His death was suggested to the court on the 22d of that month, and upon motion of his executrix and executor, Frances M. Joyce and William J. Miller, they were on that day made parties complainant, and the cause was revived in their name.

Mary White was appointed guardian *ad litem* of the infant defendants on July 5, 1882, and, as such, filed her answer in person on the twelfth of the same month, giving a statement of the ages of the said infants, by which it appeared that one of them was under fourteen years of age and the others above that age; that the defendants were the only heirs at law of Patrick White; that the trustees appointed to sell the said partnership property had attempted and failed to do so; that the prices paid for the property by the firm were as stated in the supplemental bill; that Patrick White died seized of the real estate described in the supplemental bill; that he did not leave sufficient personal estate to pay all the debts and claims against the same, and submitting the rights of the infant defendants to the protection of the court. On the same day she filed her answer as a defendant in the supplemental bill, admitting the matters and things therein set forth to be substantially true.

The court entered a decree on the same day, September 12, 1882, directing that the said five parcels of land of which Patrick White died seized be sold, appointing trustees to make the sale, and providing for the manner of advertising the same, etc.

On August 9, 1883, Mary White filed a petition alleging that the auditors, in their amended report, had failed to

charge John J. Joyce, of the firm of Joyce & Fisher, formerly the representative of Andrew J. Joyce in the firm of P. White & Co., with the sum of $1789.18 due on notes of Joyce & Fisher, which had been given by the latter firm for the stock and good will of the firm of P. White & Co., and the sum of $199.88 due on open account, and that the auditors had made certain other errors, specifically referred to in the petition, whereby the defendants were greatly injured. She therefore prayed to have the decree confirming the second auditors' report set aside, and the cause referred to the auditor of the court to state an account of the partnership affairs, and that the special auditors might be required to file all the partnership books and papers in their possession with the clerk of the court.

The complainants filed their answer to this petition on December 14, 1883, admitting that the Joyce & Fisher notes and the open account of that firm were in favor of the firm of P. White & Co., but averring on information and belief, and from reference to certain exhibits filed with the answer, that the sum of $731.38 had been collected from the estate of John J. Joyce. They also answered the allegations of the petition with regard to other alleged errors in the second auditors' report, and stated that they should not be surprised to find that errors in favor of and against Andrew J. Joyce had been committed in making the auditors' account, since they believed that to make up a true account from the books, papers, and vouchers of the partnership would be impossible, and that if the second report should be set aside it should be upon certain terms stated in the answer, among which was that the pleas of the statute of limitations should be overruled, as such pleas were abandoned at the hearing of the cause, although such fact was not embodied in the decrees confirming the auditors' reports.

The petition was, on August 2, 1884, dismissed.

On April 8, 1884, Ann Joyce, the widow of John J. Joyce, and Mary A. Joyce, Catherine Joyce, Philomena Joyce, Fannie Joyce, Monica Joyce, and Joseph I. Joyce, the adult children of John J. Joyce and Ann Joyce, filed an interven-

ing petition stating that John J. Joyce died on May 12, 1871, leaving surviving him as next of kin and heirs at law the petitioners, and alleging that during the lifetime of John J. Joyce he was engaged in the grocery business in the city of Washington with Andrew J. Joyce and Patrick White; that about the year 1858 he was engaged in the said business with Patrick White, under the firm name of P. White & Co.; that, being indebted to Andrew J. Joyce, it was agreed that the latter should take his place in the firm until his indebtedness should be paid; that for this purpose Andrew J. Joyce became a member of the said firm in his place; that while the business continued it was managed and controlled by Patrick White and John J. Joyce, and the profits thereof were appropriated by them to their use, and not by Andrew J. Joyce, he being only nominally connected with the firm for the purposes aforesaid. The petitioners showed that Andrew J. Joyce left a will providing, among other things, that all his interest in the said firm, after deducting therefrom the sum of $800, being the amount of the said debt due by John J. Joyce to Andrew J. Joyce at the time the latter became nominally a partner in the said firm, should become the property of John J. Joyce. It was alleged that the reason for the bequest was that the interest of Andrew J. Joyce in the said firm really belonged to John J. Joyce. The will was filed with the petitioner as an exhibit, as was also an instrument of writing, executed on April 8, 1884, referred to in the petition, whereby Andrew J. Joyce made the same disposition of his interest in the firm as was afterwards made in his will, subject to the said deduction of $800. The petitioners further showed that the cause was referred to special auditors, and that the auditors found that a large amount of money was due to Andrew J. Joyce; that, for the reason that certain errors had been discovered in the auditors' report, the report was set aside and further proceedings were directed to be had for the purpose of correcting the same, and also, that another auditor was substituted in the place of one of the auditors who made the report; that the auditors, subsequently appointed, had found and were about to award that Patrick White was not indebted

to Andrew J. Joyce at the time of the dissolution of the partnership of P. White & Co. in an amount exceeding the indebtedness of John J. Joyce to Andrew J. Joyce, as aforesaid, and that, therefore, if such award should be confirmed, and the court should decree that Patrick White was not indebted to Andrew J. Joyce, such decree would, as the petitioners believed, be a bar to any recovery by the representatives of John J. Joyce against the estate of Andrew J. Joyce for any interest which John J. Joyce owned in his lifetime in the firm of P. White & Co.; that the petitioners were interested in the question of the amount which might be found due in the accounting in the cause, and that a complete determination of the controversy could not be had without their having the right to be heard.

The court entered an order on April 15, 1884, permitting the petitioners to intervene as complainants, and referring the cause to the auditor of the court to further state the account between the parties, and to take further testimony.

On April 18, 1884, Joseph I. Joyce, administrator of John J. Joyce, deceased, and Ann Joyce, and Mary A. Rodriguez, Catherine Fisher, Philomena Joyce, Fannie Joyce, Monica Joyce, and Joseph I. Joyce filed an intervening petition, in which were repeated the allegations of the said petition of Ann Joyce and others filed on April 8, 1884. Leave to withdraw, amend, and refile this petition was granted on May 2, 1884. The petitioners were made parties complainant in the cause on May 13, 1884.

On June 13, 1884, an order was entered restraining further proceedings under the decree of September 12, 1882, and on the same day the defendants in the original and supplemental bills, upon leave granted by the court, filed a bill of review. Therein they stated that Mary S. White had become of age since September, 1882, and that James R. White, Louis C. White, Charles A. White, and Francis P. White were yet infants, and set out the proceedings theretofore had substantially as they appear above, They alleged that there was error in the decree of September 12, 1882, entered in pursuance of the prayers of the supplemental bill, for the reasons that

the original bill was brought to settle the affairs of the partnership, and did not allege that Andrew J. Joyce was the creditor of Patrick J. White; that the infant children of Patrick White were not necessary or proper parties to the original bill, and could not be bound by proceedings had thereon; that, inasmuch as the orders and decrees in the original proceeding were almost all entered by consent, the infants could not be bound thereby, even if they were proper parties; that the auditors'..reports showed that there was a large amount of assets belonging to the firm of P. White & Co., and that the trustees appointed to dispose of the assets had never reported to the court what disposition, if any, had been made of the same, or what application had been made of the proceeds; that the indebtedness found by the decree of May 29, 1877, was against Mary White as administratrix of Patrick White, and against his personal estate only, and could not establish the claim against Mary White and the said infants as the widow and heirs at law of Patrick White; that the so-called supplemental bill was an entirely new cause, and of a different nature from the original cause, being brought by a creditor of a deceased debtor against his heirs, infants and adults, to subject his real estate to the debt claimed to be due; that, the proceeding by supplemental bill thus being an original action, the complainant therein was bound to prove his claim as against the defendants, and that the proceedings in the suit against the administratrix, including the auditors' reports, were without effect and could not properly be used as against the defendants in the supplemental bill, though in fact they were so used, and no proof was made by the complainant in that bill; that the court appointed a guardian *ad litem* for the infants without it anywhere appearing that they had nominated or declined to nominate a guardian, although the record showed them to be over fourteen years of age; that the order appointing the guardian *ad litem* did not recite on whose motion it was made, and was in the handwriting of the solicitor of the complainant in the supplemental bill, and that the answer of the guardian *at litem*, which was also in the handwriting of the complainant's solicitor, admitted all the allega-

tions of the supplemental bill; that the decree founded upon the supplemental bill purported to be entered by consent of the solicitor of the defendants therein, whereas the record did not show that they appeared by solicitor; that the infants could not be bound by the consent of a guardian *ad litem* or solicitor; that the decree was absolute, and did not give the infants a day after they should become of age to show cause against the same; that one of the defendants in the supplemental bill had since become of age, and, by the bill of review, showed cause why the said decree should be reversed and set aside; that it appeared from proceedings had since the entering of the said decree that the administrator of John J. Joyce was the real party complainant, and that John J. Joyce, as a partner in the firm of Joyce & Fisher, was indebted to the firm of P. White & Co. in the sum of $1537.99, with interest from June 1, 1870, and also in the sum of $163, with interest from June 1, 1870, which sums were among the uncollected assets of the firm of P. White & Co., one-half of which should be applied to the payment of any indebtedness of Patrick White before his real estate should be sold to pay debts alleged to be due to John J. Joyce or his administrator; that the record in the case since the entry of the decree founded upon the supplemental bill presented new facts in the case, and brought in new complainants against whom the defendants (complainants in the bill of review) had a good defence; that, since the entry of the said decree, errors had been discovered in the auditor's account injurious to the estate of Patrick White. The complainants prayed that the decree of September 12, 1882, might be set aside.

Frances M. Joyce and William J. Miller, executrix and executor, filed their answer to the bill of review on June 13, 1884. They referred at some length to matters set out in the bill of review, bearing upon the correctness of certain items of the auditor's report and relating to the state of the accounts between the parties, and, in reference to the grounds upon which the complainants asked the court to treat the decree of September 12, 1882, as erroneous, the respondents denied that the complainants in the bill of review were improperly joined

as defendants in the original bill; admitted that the supplemental bill was filed as a creditor's bill by a creditor of a deceased debtor against his heirs, both adults and infants, to subject the deceased debtor's real estate to the payment of his indebtedness, and that the supplemental bill was filed on the alleged ground that the deceased debtor did not leave a sufficiency of personal assets to pay his debts; averred that the indebtedness of the deceased was found by a decree of the court in the cause, and was proved by the supplemental bill and by the sworn answers of the adult defendants, Mary White and Francis P. White, and the sworn answer of the infant defendants through Mary White, their guardian *ad litem*, and by the administratrix of Patrick White's estate; admitted that the decree appointing Mary White guardian *ad litem* did not show on whose motion the appointment was made, and that it did not show that the infant defendants nominated or declined to nominate a guardian, and that it was in the handwriting of the solicitor for the complainants in the supplemental bill; and admitted that the decree of September 12, 1882, was absolute and did not give a future day in court to such of the defendants as were infants, and stated that they were advised that in such a case a decree is never given to infant defendants when they shall have become of age to show cause against the decree.

Joseph I. Joyce, administrator, and Ann Joyce and others demurred to the bill of review, and the demurrer having been overruled, they appealed to the said court in general term. Afterwards, on April 28, 1886, Joseph I. Joyce, administrator, filed an answer adopting the answer of Frances M. Joyce and William J. Miller as his own.

Testimony was taken with relation to allegations of the bill of review concerning various items of account, etc., and, the cause coming on to be heard upon the bill of review, answers, and proceedings thereon, a decree was entered on November 22, 1888, whereby the said decree of September 12, 1882, was reversed. The defendants in the bill of review took an appeal to the said court in general term, where, on December 2, 1890, the said decree of reversal entered in special term was set aside

and the bill of review dismissed. Thereupon the complainants (defendants in the original proceedings) appealed to this court.

*Mr. Henry Wise Garnett* and *Mr. A. S. Worthington* for appellants.

*Mr. William John Miller* for appellees. *Mr. J. Coleman* was on the brief for Mary A. Rodrequez.

Mr. Justice Shiras, after stating the case, delivered the opinion of the court.

The view that we take of this case renders it unnecessary for us to consider all the questions presented by its somewhat complicated facts, and discussed in the arguments and briefs of counsel.

The bill originally filed, on November 29, 1871, by Andrew J. Joyce, as surviving partner of the firm of P. White & Co., against Mary White, the administratrix of Patrick White, the deceased member, alleging that there had never been a settlement of the affairs of the partnership, and that, upon such settlement, there would be a balance due the complainant, was, upon such allegations, altogether a proper one, in entertaining which no fault can be found with the court below. And as it further appears that there was real estate which had been purchased with firm money, and which was standing in the name of Patrick White, it may be conceded that there was no impropriety in making the widow and children of the deceased partner parties defendants to such bill. Of course, the only purpose in making the widow and heirs parties was to estop them from claiming title to the real estate standing in the name of Patrick White which belonged to the firm, and the sale of which was necessary to pay the partnership debts.

The bill alleged that the children of Patrick White were infants, under the age of twenty-one years, and asked that the court appoint a guardian *ad litem;* and the record discloses that the court so appointed one James White, who filed an answer as such, in which it was alleged that said infants

could not admit or deny the allegations of the bill of complaint, and that the guardian, therefore, submitted their rights and interests to the protection of the court. This answer was filed January 5, 1872.

Auditors were appointed to state an account, and the case was so proceeded in that, on May 29, 1877, a decree was entered, confirming the auditors' report, decreeing that there was due from Mary White, administratrix of Patrick White, deceased, to the complainant the sum of two thousand seven hundred dollars, with interest from June 1, 1870; that there was due by the partnership the sum of two hundred and ninety-four dollars; that the real estate mentioned in the bill was partnership property, and was to be sold in order to settle the partnership and pay the indebtedness, and appointing trustees to make such sale.

No further proceedings are disclosed by the record until, on April 20, 1880, the trustees, who had been appointed to make sale of the real estate, filed their bond conditioned for the faithful performance of their duties.

On May 24, 1882, more than eleven years after the death of Patrick White, and five years after the entry of the decree settling the account between the partners and ordering the sale of the partnership real estate, Andrew Joyce filed another bill, which he styled a supplemental bill, in which, after stating that the trustees had, after effort made, failed to sell the said partnership real estate, it was alleged that Patrick White had died seized and possessed of certain real estate, and it was asked that a decree should be granted ordering the sale of such real estate. To this bill Mary White, administratrix of Patrick White, deceased; Francis P. White, a son who had become of age since the filing of the first bill; Mary White, widow; Mary S. White, James R. White, Lewis C. White, and Charles A. White, minor children of Patrick White, deceased, were made defendants. By an order made July 5, 1882, Mary White, the mother, was appointed guardian *ad litem*, and, as such, she filed an answer in which it was stated that said infant defendants submitted their rights to the protection of the court. Mary White and Francis P. White filed

an answer admitting the allegations of the bill. The result was a decree dated September 12, 1882, ordering a sale of the real estate of Patrick White, deceased.

Without repeating the history of the subsequent proceedings, which are detailed at length in the statement of the facts, we come to the bill of review filed, on June 13, 1884, by the widow and children of Patrick White, by which it was sought to set aside the decree of September 12, 1882. The bill complained of many mistakes of fact and irregularities in the proceedings, which we do not find it necessary to notice. What we do deem essential allegations are those in which it is stated that the original bill, filed on November 29, 1871, was a bill in equity brought by a surviving partner to settle the affairs of the copartnership, and that the bill filed May 24, 1882, upon which the decree of September 12, 1882, was founded was an entirely new cause, of a different character and nature from the original cause, being a bill in equity by a creditor of a deceased debtor against his heirs, infants and adults, to subject his real estate to the debt claimed to be due; that this was a suit under the act of Maryland of March 10, 1785, c. 72, and could not properly be regarded as supplemental to the first bill.

The section of the act referred to is in the following terms:

"SEC. 5. If any person hath died, or hereafter shall die, without leaving personal estate sufficient to discharge the debts by him or her due, and shall leave real estate which descends to a minor or person being idiot, lunatic, or *non compos mentis*, or shall devise said real estate to a minor or person being idiot, lunatic, or *non compos mentis*, or who shall afterwards become *non compos mentis*, the chancellor shall have full power and authority, upon application of any creditor of such deceased person, after summoning such minor and his appearance by guardian, to be appointed as aforesaid, and hearing as aforesaid, . . . and the justice of the claim of such creditor is fully established, if, upon consideration of all circumstances, it shall appear to the chancellor to be just and proper that such debts should be

paid by a sale of such real estate, to order the whole or part of the real estate so descending or devised to be sold for the payment of the debts due by the deceased."

This statute was considered by this court in the case of *Ingle* v. *Jones*, 9 Wall. 486, 495, and it was held that "it makes the proceeding against the administrator and the heir, when the latter proceeding is necessary, entirely independent of each other. The duties of the administrator are confined to the personal estate, and never extend beyond it. If that be insufficient to discharge the debts, and it be necessary to resort to the realty of the deceased for that purpose, a proceeding against the heir must be instituted. In that event, whatever has been done by the administrator is without effect, as to the property sought to be charged. A judgment against the administrator is not evidence against the heir. The demand must be proved in all respects as if there had been no prior proceeding to effect its collection, and the statute of limitations may be pleaded with the same effect as if there had been no prior recovery against the personal representative."

Upon principle and authority, we think it clear that the bill filed May 24, 1882, seeking to subject the real estate of Patrick White which had descended to his heirs to the payment of debts, was essentially a new proceeding, in which it was competent for the heirs to plead the statute of limitations. Calling the bill a supplemental one would not deprive them of that right.

The record shows that, in the answer put in on behalf of the minors who were defendants by the guardian *ad litem*, it was alleged that "the said defendants being infants of tender years submit their rights to the protection of the court."

It is immaterial whether the effort to reach the real estate in the hands of the heirs by a so-called supplemental bill was or was not for the purpose of escaping from the operation of the statute of limitations. Even if the second bill were regarded as an amendment of the first, it would not deprive the defendants of their right to plead the statute of limitations, at least in equity. *Merchants' Bank* v. *Stevenson*, 7 Allen,

489. By the statute in force in the District of Columbia, (Maryland Acts of 1715, c. 23, § 2,) the action was barred in three years, or on the 1st day of June, 1873. The second bill was filed on May 24, 1882, nearly nine years after the suit was barred.

It is sufficient to say that it was the duty of the court to give the minor defendants the benefit of the statute. The act under which the proceedings were had provided that, before real estate which had descended to minor heirs could be sold to pay debts of the ancestor, "it shall appear to the chancellor to be just and proper that such debts should be paid by a sale of such real estate."

The answer of the minors, filed by the guardian *ad litem*, craved the protection of the court:

"The answer of an infant being expressed to be made by his guardian, the general reservation at the beginning, the denial of combination, together with the general traverse at the conclusion, common to all other answers, are omitted. The reason of this is that an infant is entitled to every benefit, which can be taken by exception to a bill, although he does not make such reservation, or expressly make the exception. He is also considered as incapable of entering into the unlawful combination; and his answer cannot be excepted to for insufficiency; nor can any admission made by him be binding." Story Equity Pl. § 871.

In *Wright* v. *Miller*, 1 Sandford Ch. (N. Y.) 109, it was held that the answer of an infant defendant by his guardian *ad litem* is not binding upon him, and no decree can be made on its admission of facts. Where relief is sought against infants, the facts upon which it is founded must be proved; they cannot be taken by admission; and *Wrottesley* v. *Bendish*, 3 P. Wm. 236, was cited to that effect.

Where there are infant defendants, and it is necessary in order to entitle the complainant to the relief he prays that certain facts should be before the court, such facts, although they might be the subject of admission on the part of the adults, must be proved against the infants. 1 Daniell's Ch. Pr 238; *Mills* v. *Dennis*, 3 Johns. Sup. Ct. 367.

This record discloses that no proof whatever was adduced to sustain the allegations of the second bill. The admissions of the answers were solely relied on.

It is, however, contended on behalf of the appellees that where a decree is signed by the court, with the consent of the party or of his solicitor, there can be no bill of review except for fraud or collusion ; that, even in the case of infants, a decree entered with the consent of their solicitor cannot be set aside except on allegation and proof of fraud ; and *Walsh* v. *Walsh*, 116 Mass. 377, and *Thompson* v. *Maxwell*, 95 U. S. 391, 398, are cited to that effect.

To bring themselves within the scope of those cases the appellees assert that the minor defendants by a solicitor of record consented to the decree of September 12, 1882. This is denied by the appellants.

The issue upon this question is found in certain allegations of the bill of review and in the answers thereto. The bill alleges that the order of May 24, 1882, giving leave to the complainant to file the supplemental bill, and which purports to have been passed by consent, was in the handwriting of the solicitor for the complainant ; that the order of July 5, 1882, appointing Mary White, mother of the infant defendants, their guardian *ad litem* to answer said supplemental bill, does not show on whose motion the order was passed, and the order was in the handwriting of the solicitor for the complainant ; that the answer filed on July 12, 1882, by Mary White as guardian *ad litem* was so filed by the guardian *ad litem* without an attorney or solicitor, and was entirely in the handwriting of the solicitor for the complainant, that the decree of September 12, 1882, appears by the record to have been passed when the minor defendants were not represented by any attorney or solicitor.

To these allegations the defendants in the bill of review answer, acknowledging that said orders were in the handwriting of the solicitor for the complainant, and, as respects the answer of the guardian *ad litem*, they say : " We admit the said answer of the guardian *ad litem* is in the handwriting of the solicitor for the complainant, as alleged, and, in further

answer, we are advised by said solicitor that he, from the best of his knowledge, remembrance, and belief, prepared said answer at the request of said Mary White, guardian *ad litem* of said infant defendants, and that before she swore to and filed the same she submitted the same to Mr. Morris, solicitor of record in said cause for said defendants." And they further allege that " we are advised and believe, and, so believing, say that said cause was heard by the court, on the statement of facts contained in the papers and proceedings in said cause given to the court by solicitor of complainant and the said defendants, and the decree was prepared by the solicitor of complainant and was submitted to Mr. Morris, solicitor of defendants in said cause, who, on behalf of the said defendants, consented to the same, and was then signed by the court; and in further answer we say that we are informed and believe that Mr. Morris represented as solicitor on the hearing of said cause not only the infant defendants and their guardian *ad litem*, but also represented as solicitor in said cause the said Mary White and Francis P. White."

No evidence was taken by either party on this question. The answers can scarcely be regarded as responsive to the allegations of the bill, beyond the admissions therein contained, that the orders and the answers of the guardian *ad litem* were in the handwriting of the solicitor for the complainant. The remaining statements were in the nature of avoidance, and, at any rate, only profess to be based on hearsay.

When we resort to the record of the case in which the supplemental bill was filed, and which forms part of the record before us, we fail to find any evidence that the infant defendants were represented by any solicitor. The answer put in on their behalf, and in which their rights are submitted to the protection of the court, purports to be filed by the guardian *ad litem*, and is not authenticated by the signature of any counsel. It is true that at the foot of the decree of September 12, 1882, and which, it may be observed, is not a final one, but merely an order of sale, there is the following entry : "I agree to the foregoing decree. M. F. Morris, solicitor for defendants."

But it is by no means a necessary inference, from this writing, that Mr. Morris either was or represented himself to be solicitor for the infants. The record shows that when the previous order of May 24, 1882, was made granting leave to file the supplemental bill, Messrs. Merrick and Morris appeared as solicitors for the adult defendants, and consented to the filing of such bill. But it cannot be claimed that they thereby represented themselves to be entitled to represent the infants, because the bill itself shows that the infants were unrepresented, and prayed that a guardian *ad litem* should be appointed. The appointment of the guardian was subsequently made on July 5, 1882, when first the infants were in court. If the infant defendants are to be estopped by the consent of a solicitor, as against their submission of their rights to the protection of the court, the fact that they were actually represented by a solicitor should be made to appear either by a formal entry appearing of record, or by evidence showing such fact. It is contended in the brief of the appellees that such formal entry was made, by the filing of a præcipe signed by R. T. Merrick, requesting the clerk to enter his appearance for the defendants, and it is said that it is well known that Mr. Morris was Mr. Merrick's partner. It is enough to say, that this appearance by Mr. Merrick for the defendants was entered on January 3, 1882, several months before the supplemental bill was filed. It would be strange reasoning that would find in such an appearance any right to appear for infant defendants in a bill not yet filed.

Nor can it be safely implied, from the fact that Mr. Morris styled himself as solicitor for the defendants, and appeared before the auditors as such, that he had been employed to act as solicitor for the infants. Such conduct was entirely consistent with the admitted fact that he was authorized to appear for the adult defendants.

Without pursuing the subject further, we reach the conclusion that the court below erred in dismissing the bill of review so far as the minors were concerned, and that the decree should be modified so as to protect their interests in the estate which they inherited from the father, Patrick White.

A different conclusion is necessary as respects Mary White, the mother, and Francis P. White, the adult son. The record discloses that, on July 12, 1882, they filed a joint answer to the bill filed May 24, 1882, in which they admitted the allegations thereof; and on September 12, 1882, their solicitor, Mr. Morris, consented to the decree of that date. We perceive no proof of fraud or collusion affecting them, and in their petition of November 30, 1888, in which they prayed for leave to withdraw their answer, they do not aver that they were induced to answer as they did by reason of any misrepresentation or fraud practised upon them. The long delay of six years from the filing of their answer, and of more than four years from the bringing of the bill of review, is not satisfactorily explained; and, upon well-settled principles, a court of equity must leave them in the position in which they voluntarily placed themselves.

*The decree of the court below is reversed; the appellants, Mary White and Francis P. White, and the appellees to pay one-half of the costs, respectively, and the cause remanded with directions to proceed in accordance with this opinion.*