**Jose PADILLA, by Donna R. NEWMAN, as next friend, Petitioner,**

v.

**Donald RUMSFELD, Respondent.**

**No. 02 Civ. 4445(MBM).**

United States District Court, S.D. New York.

April 9, 2003.

Donna R. Newman, New York, NY, Andrew G. Patel, New York, NY, for Petitioner.

James B. Comey, United States Attorney for the Southern District of New York, New York, NY, Paul D. Clement, Deputy Solicitor General, David B. Salmons, Sri Srinivasan, Assistants to the Solicitor General, U.S. Department of Justice Office of the Solicitor General, Washington DC, Jonathan L. Marcus, Attorney, Department of Justice, U.S. Department of Justice, Washington, DC, Eric B. Bruce, Assistant U.S. Attorney, New York, NY, for Respondent.

## OPINION AND ORDER

MUKASEY, District Judge.

Now before the court is the government's application to have orders in this case certified for interlocutory appeal pursuant to 28 U.S.C. § 1292(b), and Padilla's request that I not only reject the government's application but also enter an injunction directing in detail that the prior order granting Padilla access to his lawyers be

followed forthwith and without a stay. For the reasons set forth below, the government's application for certification is granted.

## I.

In an Opinion and Order dated December 4, 2002, this court ruled, among other things, that Padilla's attorney may act as next friend for the purpose of challenging by habeas corpus petition his detention as an unlawful combatant, that Secretary of Defense Donald Rumsfeld is a proper respondent in this case, that this court has jurisdiction to hear the petition, that the President has the power to direct that an American citizen captured in the United States be detained as an unlawful combatant, and that the President's determination would be sustained as to Padilla if the court found, after hearing from Padilla, that there was some evidence to support it. The court ruled also that Padilla would be permitted to consult with counsel and directed the parties to confer in aid of agreeing on conditions for that consultation. The court said at the time that to the extent agreement could not be reached, it would impose such conditions. In an Opinion and Order dated March 11, 2003, the court granted the government's motion to reargue the ruling that Padilla could consult with counsel, but on reargument adhered to that ruling. Those opinions are reported at 233 F.Supp.2d 564 (S.D.N.Y. 2002) and 243 F.Supp.2d 42 (S.D.N.Y. 2003), respectively, and familiarity with them is assumed for current purposes.

On March 20, 2003, in advance of a conference that had been called for the purpose of discussing the conditions for consultation between Padilla and his lawyers, the government notified the court by letter that there were no conditions to which it could agree, and reiterated its previously expressed view that such con-sultation could endanger national security and prevent effective interrogation of Padilla. The government disclosed that it would ask the court either to determine the conditions for consultation on its own, or to certify for interlocutory appeal certain issues previously decided. (Letter of Comey to the Court of 3/20/03, at 1–2) Padilla urged the court to reject as untimely the government's suggestion to certify issues for interlocutory appeal (Letter of Newman to the Court of 3/24/03, at 1–3) and to direct that consultation be permitted immediately, on the following conditions, among others: (i) counsel be permitted to meet "privately" with Padilla without physical separation; (ii) counsel be permitted five hours per day of access to Padilla for five consecutive days; (iii) Padilla not be shackled during meetings with counsel; (iv) any "sensory deprivation" techniques to which Padilla may have been subject be suspended for three days before first meeting with counsel; (v) counsel be permitted to take notes that would be neither inspected nor confiscated; (vi) Padilla be permitted to obtain and retain copies of court papers; (vii) counsel be permitted to inspect Padilla's institutional medical records to assure that he is competent to consult with them. (Letter of Patel to the Court of 3/24/03, at 3)

At a conference on March 27, 2003, the government appeared to agree, however tentatively, that even if the court imposed conditions and directed that a meeting between Padilla and his lawyers proceed, and such an order were upheld on appeal, the government might want an opportunity to ask the court to modify the conditions in some respect. However, it was the government's view at this point that allowing Padilla access to counsel would work irreparable injury—"break the proverbial pane of glass"—and that the government would find it difficult "to differentiate between

... a golf ball or [a] basketball." (Tr. of 3/27/03, at 4)

As noted, the government has now applied for certification pursuant to 28 U.S.C. § 1292(b). Padilla complains that the government's application is designed simply to delay the case further, and urges that the court enter an order directing that counsel be permitted to consult with Padilla immediately and include it its order at least the terms requested in the Patel letter of March 24, cited above.

## II.

■ Section 1292(b) provides a means of appealing from interlocutory orders that are otherwise not appealable:

> When a district judge, in making in a civil action an order not otherwise appealable under this section, shall be of the opinion that such order involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation, he shall so state in writing in such order. The Court of Appeals ... may thereupon, in its discretion, permit an appeal to be taken from such order, if application is made to it within ten days after the entry of the order.

28 U.S.C. § 1292(b) (2000). Section 1292(b) is meant to be applied rarely: "Only 'exceptional circumstances [will] justify a departure from the basic policy of postponing appellate review until after the entry of a final judgment.'" *Klinghoffer v. S.N.C. Achille Lauro,* 921 F.2d 21, 25 (2d Cir.1990) (quoting *Coopers & Lybrand v. Livesay,* 437 U.S. 463, 475, 98 S.Ct. 2454, 57 L.Ed.2d 351 (1978)). Courts have certified orders .for interlocutory appeal when the issues they raise are difficult and novel, in addition to being potentially dispositive. *See, e.g., id.* at 25 (granting in-

terlocutory review when district court said that issues were "difficult and of first impression"); *Zenith Radio Corp. v. Matsushita Elec. Indus. Co.,* 494 F.Supp. 1190, 1244 (E.D.Pa.1980) ("[O]ur decision to certify our order is prompted in large part by the exceptional novelty and complexity of the legal question here presented. Moreover, a prompt and authoritative disposition of the question is extremely important to the prudent management of the litigation.").

The government urges that I certify for interlocutory appeal the determination that Padilla's attorney, Donna Newman, may act as next friend in pursuing the habeas corpus petition that even the government does not deny Padilla may file—a ruling that I cannot imagine will be open to serious question—as well as the determination that Secretary Rumsfeld is a proper respondent here and the ruling that Padilla may confer with his lawyers. The government does not suggest among the issues worthy of certification the core ruling in this proceeding so far—that President Bush has the power to direct the detention of an American citizen captured in the United States as an enemy combatant—or the court's determination that the "some evidence" standard will guide the decision as to whether that presidential power has been exercised properly or not in this case, even though the latter holdings might seem to less partisan eyes to present a "substantial ground for difference of opinion," 28 U.S.C. § 1292(b), and at least as worthy of interlocutory review as the issues the government has proffered.

■ On his part, Padilla urges that I deny certification because the government is simply trying to delay the progress of this case, and instead enter an injunction directing in detail the terms on which he is to be permitted to consult with counsel,

and that no stay of that injunction be granted. This argument seems to overlook some salient realities. First, section 1292(b) itself contains no time deadline for seeking certification, although it contemplates prompt action. At least since the court's March 11 opinion, the government has moved promptly. Second, this court's rulings are determinative for the moment, but they are not authoritative until they are final. By the relevant terms of 28 U.S.C. § 1292(a), courts of appeals have jurisdiction to hear appeals from "[i]nterlocutory orders of the district courts of the United States ... granting ... injunctions." Even though Federal Rule of Civil Procedure 62(a) makes injunctions immediately binding unless stayed by the court,[1] paragraph (g) of the same Rule permits a judge of an appellate court to grant a stay.[2] That is, if I enter an injunction of the sort Padilla has requested, there is no doubt that it would be appealable. It beggars belief that even if I did not stay the injunction, a judge of the Court of Appeals would not do so. Here I add my own belief that it would be deeply irresponsible for a district court to deny a brief stay at least to permit further application to the Court of Appeals in the face of the government's insistence that issues of national security are at stake. Thus, issuance of an injunction would not speed resolution of this case any more than issuance of a certification.

Further, although the government invited me in its March 20 letter to enter an injunction on such terms as might appear reasonable, the government also acknowledged at the March 27 conference that because it has declined to enter into any discussion of possible conditions that might control Padilla's meeting with his lawyers, there may be matters relating to Padilla's detention that are unknown to the court and to Padilla's lawyers that would have to be considered before any injunction could be carried into effect. As noted above, if the ruling that Padilla may confer with his lawyers were to be upheld on appeal, the government might want to be heard before conditions for such a meeting became fixed. *See supra* p. 220. Although the government has suggested that issuance of an injunction might "promote judicial economy" (Letter of Comey to the Court of 3/20/03, at 1; *see also* Tr. of 3/27/03, at 5), that suggestion invites an order that can have no certain effect other than to assure that the government can appeal, and an order that, even if affirmed, will have to be revisited at a later date, simply as a matter of prudence, before it becomes final. Such an order would not promote judicial economy. Furthermore, although the order might not be merely advisory, strictly speaking, it would be awfully close to that, and therefore awfully close to something an Article III court should not issue. *See Flast v. Cohen*, 392 U.S. 83, 96–97, 88 S.Ct. 1942, 20 L.Ed.2d 947 (1968).

### III.

■ In these circumstances, and by the standards that govern here, the more straightforward course appears to be a certification pursuant to 28 U.S.C. § 1292(b). I believe that the orders of December 4, 2002 and March 11, 2003 involve the following controlling questions

---

1. In relevant part, Rule 62(a) provides: "Unless otherwise ordered by the court, an interlocutory or final judgment in an action for an injunction ... shall not be stayed during the period after its entry and until an appeal is taken or during the pendency of an appeal." Fed.R.Civ.P. 62(a).

2. Rule 62(g) reads in relevant part: "The provisions in this rule do not limit any power of an appellate court or of a judge or justice thereof to ... suspend ... an injunction during the pendency of an appeal...." Fed. R.Civ.P. 62(g).

of law as to which there is substantial ground for difference of opinion:

1. Is the Secretary of Defense, Donald Rumsfeld, a proper respondent in this case?

2. Does this court have personal jurisdiction over Secretary Rumsfeld?

3. Does the President have the authority to designate as an enemy combatant an American citizen captured within the United States, and, through the Secretary of Defense, to detain him for the duration of armed conflict with al Qaeda?

4. What burden must the government meet to detain petitioner as an enemy combatant?

5. Does petitioner have the right to present facts in support of his habeas corpus petition?

6. Was it a proper exercise of this court's discretion and its authority under the All Writs Act to direct that petitioner be afforded access to counsel for the purpose of presenting facts in support of his petition? [3]

The resolution of these questions upon an immediate appeal is likely to advance materially the ultimate termination of the litigation.

■ District courts are instructed not merely to make "a bare finding that the statutory requirements of section 1292(b) have been met," *Isra Fruit, Ltd. v. Agrexco Agric. Exp. Co.,* 804 F.2d 24, 25 (2d Cir.1986), but to elaborate by explaining "why the judge believes that there is a 'substantial ground for difference of opinion' and that 'immediate appeal from the order may materially advance the ultimate termination of the litigation.'" *Id.* As to

the issue of substantial ground for difference of opinion, the first two of the certified questions were resolved in the December 4 opinion based in part on circuit law that is not entirely settled and has not been applied to facts like those present here; the authority on which the court relied to resolve the third through fifth of the certified questions related principally to conflicts long past that others may find different in some relevant respect from the one at hand. As I noted in the December 4 opinion, "it would be a mistake to create the impression that there is a lush and vibrant jurisprudence governing these matters. There isn't." 233 F.Supp.2d at 607. The sixth certified question involves a use of the All Writs Act that I believe to have been proper, although novel. It seems fairly obvious how the litigation could be materially advanced—indeed terminated—depending on how these questions are answered, and there seems little need to make the obvious explicit.

As set forth above, the statute provides: "When a district judge, in making in a civil action an order not otherwise appealable under this section, shall be of the opinion that such order involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation, he shall so state in writing in such order." 28 U.S.C. § 1292(b) (2000). That seems to mean that the prior orders of the court resolving the certified questions must themselves contain the certification. *See* Fed. R.App. P. 5(a)(3). Accordingly, for the above reasons, the opinions and orders entered in

---

3. Although these specific questions meet the requirements of section 1292(b), the Court of Appeals "may address any issue fairly included within the certified order" because "it is the *order* that is appealable, and not the con-

trolling question identified by the district court." *Yamaha Motor Corp. v. Calhoun,* 516 U.S. 199, 205, 116 S.Ct. 619, 133 L.Ed.2d 578 (1996) (emphasis in original) (internal quotation marks omitted).

this case on December 4, 2002 and March 11, 2003 are deemed amended to include the discussion set forth above.