DIANA GRIBBON MOTZ,
Circuit Judge, dissenting from denial of rehearing en banc:
For more than a year, a United States citizen, Yaser Esam Hamdi, has been labeled an enemy combatant and held in solitary confinement in a Norfolk, Virginia naval brig. He has not been charged with a crime, let alone convicted of one. The Executive will not state when, if ever, he will be released. Nor has the Executive allowed Hamdi to appear in court, consult with counsel, or communicate in any way with the outside world.
Precedent dictates that we must tolerate some abrogation of constitutional rights if Hamdi is, in fact, an enemy combatant. However, a panel of this court has held that a short hearsay declaration by Mr. Michael Mobbs — an unelected, otherwise unknown, government “advisor,” — “standing alone” (subject to no challenge by Hamdi or court-ordered verification) is “sufficient as a matter of law to allow meaningful judicial review” and approval of the Executive’s designation of Hamdi as an enemy combatant. See Hamdi v. Rumsfeld, 316 F.3d 450 (4th Cir.2003). I cannot agree.
To justify forfeiture of a citizen’s constitutional rights, the Executive must establish enemy combatant status with more than hearsay. In holding to the contrary, *369 the panel aEows appropriate deference to the Executive’s authority in matters of war to eradicate the Judiciary’s own Constitutional role: protection of the individual freedoms guaranteed all citizens. With respect, I believe the panel has seriously erred, and I dissent from the court’s refusal to rehear this case en banc.
I.
The panel’s decision marks the first time in our history that a federal court has approved the elimination of protections afforded a citizen by the Constitution solely on the basis of the Executive’s designation of that citizen as an enemy combatant, without testing the accuracy of the designation. Neither the Constitution nor controlling precedent sanction this holding.
The rights provided in the Constitution to each American citizen include the right to due process of law and to petition for a writ of habeas corpus. U.S. Const. amend. V; art. I, § 9. Unquestionably, the avaE-ability of habeas relief extends to detention pursuant to the Executive’s military authority'.- See, e.g., Ex parte Milligan, 71 U.S. (4 Wall.) 2, 120-21, 18 L.Ed. 281 (1866); Duncan v. Kahanamoku, 327 U.S. 304, 66 S.Ct. 606, 90 L.Ed. 688 (1946). Just as clearly, the responsibility for ensuring that individuals detained by the Executive receive the due process guarantees of the Constitution, including the right to petition for habeas corpus, rests with the courts. See In re Yamashita, 327 U.S. 1, 9, 66 S.Ct. 340, 90 L.Ed. 499 (1946). As the Supreme Court has explained, “the allowable limits of military discretion, and whether or not they have been overstepped in a particular case, are judicial questions,” Sterling v. Constantin, 287 U.S. 378, 401, 53 S.Ct. 190, 77 L.Ed. 375 (1932); see Duncan, 327 U.S. at 322-23, 66 S.Ct. 606; and the “government must always be accountable to the judiciary for a man’s imprisonment.” Fay v. Noia, 372 U.S. 391, 402, 83 S.Ct. 822, 9 L.Ed.2d 837 (1963), overruled on other grounds, Coleman v. Thompson, 501 U.S. 722, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991).
The panel acknowledges as much, conceding that “[t]he duty of the judicial branch to protect our individual freedoms does not simply cease whenever our military forces are committed by the poHtical branches to armed conflict” and that “detention of United States citizens must be subject to judicial review.” Hamdi, 316 F.3d at 464. Further, the panel recognizes that Hamdi, “an American citizen currently detained on American soE,” 'is entitled to petition for a writ of habeas corpus and that habeas proceedings “natu-raUy contemplate! ] the prospect of factual development.” Id. at 470, 473. The panel even recognizes the inadequacy of the sole “evidence” the Executive has proffered to support its enemy combatant designation of Hamdi — the Mobbs declaration — for it admits that “a capable attorney could challenge the hearsay nature of the Mobbs declaration and probe each and every paragraph for incompleteness or inconsistency.” Id. at 473. Yet, the panel concludes that “no ... factual inquiry on our part is necessary or proper” and that “Hamdi is not entitled to challenge the facts presented in the Mobbs declaration.” Id. at 473, 476.
The panel suggests that this conclusion accords with precedent. See id. at 475 (“this same issue arose in Quirin •... the Quirin principle applies here”). In fact the Supreme Court has never held that a person designated by the Executive as an enemy combatant cannot challenge that designation or that a court cannot require the Executive to substantiate it. In the case ■ on which the majority rehes, Ex Parte Quirin, 317 U.S. 1, 63 S.Ct. 2, 87 L.Ed. 3 (1942), the Court did hold that for *370 a violation of the laws of war, even an American citizen could be treated as an “enemy combatant” and held without the full array of Constitutional rights, but only because the citizen, after consultation with legal counsel, stipulated to the facts supporting the enemy combatant designation.
Thus, in Quirin, a German-born soldier, who claimed to be an American citizen, stipulated that after receiving payment by the German government and instruction by the “German High Command to destroy war industries and war facilities in the United States,” he and six other German soldiers secretly landed in the United States during World War II with “a supply of explosives.” Id. at 20-21, 63 S.Ct. 2. Only- after finding that these “conceded facts” demonstrated “plainly” that the soldiers were within the “boundaries of the jurisdiction of military tribunals,” did the Supreme Court reject their contention that •they could not be tried by a military commission. Id. at 46, 63 S.Ct. 2. Critical to the case at hand, the Court first expressly rejected the Executive’s argument that the soldiers, “must be denied access to the courts because they are enemy aliens who have entered our territory.” Id. at 24-25, 63 S.Ct. 2. Instead, each of the soldiers was permitted, with the assistance of counsel, to file his own (not a next friend) petition for a writ of habeas corpus, which the courts reviewed to ensure that each soldier was in fact an enemy combatant. Id.
None of the few other Supreme Court cases addressing the rights of enemy combatants involved American citizens. But even when dealing with the claims of German and Japanese citizens detained by military authorities outside the United States during World War II, the Court has never suggested that an enemy combatant is without recourse to challenge that designation in court. On the contrary, the Court has held that a resident alien — who, the Court specifically noted, has far less status than those, like Hamdi, who enjoy the “high privilege” of citizenship — can challenge the Executive’s designation of him as an enemy. Johnson v. Eisentrager, 339 U.S. 763, 770, 775, 70 S.Ct. 936, 94 L.Ed. 1255 (1950) (internal quotation marks and citation omitted). As the Court explained: “Courts will entertain his plea for freedom from Executive custody only to ascertain the existence of a state of war and whether he is an alien enemy." Id. at 775, 70 S.Ct. 936 (emphasis added); see also id. at 784-85, 70 S.Ct. 936; Ludecke v. Watkins, 335 U.S. 160, 171 n. 17, 68 S.Ct. 1429, 92 L.Ed. 1881 (1948) (noting that “whether the person restrained is in fact an alien enemy ... may also be reviewed by the courts”); Yamashita, 327 U.S. at 8, 66 S.Ct. 340 (noting that “[t]he courts may inquire whether the detention complained of is within the authority of those detaining the petitioner” and “the Executive branch of the government could not, unless there was a suspension of the writ, withdraw from the courts the duty and power” to inquire whether the “Constitution or laws of the United States withhold authority” from a military tribunal).
Moreover, the Supreme Court has upheld the Executive’s designation of a person as an enemy alien or enemy combatant, only when presented with facts supporting this designation — facts stipulated by the petitioner with the advice of counsel, as in Quirin, or facts proved by the prosecution at a military trial in which the petitioner was afforded counsel, as in Yamashita. In the case at hand, no facts have been presented to support the Executive’s designation. The Executive has not permitted Hamdi to consult with counsel or challenge the allegations contained in the Mobbs declaration. And Hamdi has certainly not stipulated to anything. Denied the most basic procedural protections, Hamdi could *371 not possibly mount a challenge to the Executive’s designation of him as an enemy combatant. Yet in Eisentrager, Lude eke, and Yamashita the Supreme Court has explained that even aliens are entitled to precisely this right. Thus, far from supporting the panel’s position, controlling precedent prohibits its approach.
II.
Without any acknowledgment of its break with precedent, the panel embarks on a perilous new course — approving the Executive’s designation of enemy combatant status not on the basis of facts stipulated or proven, but solely on the basis of an unknown Executive advisor’s declaration, which the panel itself concedes is subject to challenge as “incomplete[ ]” and “inconsisten[t]” hearsay. Hamdi, 316 F.3d at 473. My good colleagues’ opinion, although well-intentioned and replete with compelling declarations of separation-of-powers principles with which no one would quarrel, utterly fails to set forth an adequate rationale for its breathtaking holding.
Indeed, the panel offers only a single justification for its unprecedented decision to permit the Executive to support its designation of Hamdi as an enemy combatant with pure hearsay: Hamdi’s capture in a “zone of active combat” was assertedly “undisputed.” See Hamdi, 316 F.3d at 459 (“Because it is undisputed that Hamdi was captured in a zone of active combat in a foreign theater of conflict, we hold the submitted declaration is ... sufficient.” (emphasis added)); id. at 476 (“Hamdi is not entitled to challenge the facts presented in the Mobbs declaration,” because he “has been designated an enemy combatant and it is undisputed that he was captured in a zone of active combat operations abroad.” (emphasis added)). According to the panel, this apparently all-important fact is “undisputed” because “Hamdi’s petition places him squarely within the zone of active combat.” Id. at 474; see also id. at 460-61.
This is a thin reed on which to rest abrogation of constitutional rights, and one that collapses entirely upon examination. For Hamdi has never been given the opportunity to dispute any facts. The “facts” as to the place of Hamdi’s “capture” could only be “undisputed” by reliance on a facially innocuous statement in a petition filed by Hamdi’s father, as his “next friend.” Thus, the panel determines that a petition filed by a next friend on behalf of, but without access to or consultation with, the petitioner constitutes a binding admission by the petitioner that results in the forfeiture of the petitioner’s constitutional rights. This holding flatly contravenes venerable Supreme Court precedent. The Court long ago held that “a next friend or guardian ad litem cannot, by admissions or stipulations, surrender the rights of’ the represented party. Kingsbury v. Buckner, 134 U.S. 650, 680, 10 S.Ct. 638, 33 L.Ed. 1047 (1890); see also White v. Miller, 158 U.S. 128, 146, 15 S.Ct. 788, 39 L.Ed. 921 (1895) (same); Stolte v. Larkin, 110 F.2d 226, 233 (8th Cir.1940) (collecting eases).[1]
*372 Just as importantly, even if the statement in his father’s petition that “[w]hen seized,” Hamdi “resided in Afghanistan,” J.A. 9, somehow translated into Hamdi’s admission that he was captured “in a zone of active combat,” Hamdi, 316 F.3d at 459, this should not render the Executive’s designation of enemy combatant status irre-buttable. The ramifications of such a holding are chilling. Pursuant to the panel’s decision, for example, any of the “embedded” American journalists covering the war in Iraq or any member of a humanitarian organization working in Afghanistan,[2] could be imprisoned indefinitely without being charged with a crime or provided access to counsel if the Executive designated that person an “enemy combatant.” Indeed, under the panel’s holding, any American citizen seized in a part of the world where American troops are present — e.g., the former Yugoslavia, the Philippines, or Korea — could be imprisoned indefinitely without being charged with a crime or afforded legal counsel, if the Executive' asserted that the area was a zone of active combat.[3] Thus, the only basis for relying on a hearsay declaration to ap *373 prove the Executive’s designation of Ham-di as an enemy combatant, ie., Hamdi’s assertedly “undisputed capture[ ] in a zone of active combat,” is in truth a chimera and certainly provides no justification for the panel’s extraordinary holding.
Nor, as the panel implicitly acknowledges, does the two-page, nine paragraph Mobbs declaration by itself, provide such justification. The panel’s assessment of the Mobbs declaration is entirely accurate; that declaration could indeed be easily and successfully “challenged” as “hearsay,” and “probe[d]” for “incompleteness or inconsistency.” Hamdi, 316 F.3d at 473.[4] The declaration contains no indi-cia of reliability except for Mr. Mobbs’ oath — which seems of minimal value given that Mr. Mobbs does not claim any personal knowledge of the facts surrounding Hamdi’s capture and incarceration. Rather Mr. Mobbs states that his “familiarity]” with “the facts and circumstances” surrounding Hamdi’s capture, is “[b]ased upon” his review of undisclosed and unenumerated “relevant records and reports.” J.A. 61. In fact, Mr. Mobbs himself did not (perhaps could not) make the determination that Hamdi is an “enemy combatant.” Instead, Mr. Mobbs can merely declare that, according to “records and reports,” “Hamdi was determined by the U.S. military screening team to meet the criteria for enemy combatants.” J.A. 62. The Mobbs declaration does not even state what, if any, evidence this “U.S. military screening team” relied on in making that determination or whether Mr. Mobbs himself conducted any independent review of this evidence. Indeed, the declaration’s statement that Northern Alliance troops initially captured Hamdi suggests that even the U.S. military does not have any first-hand knowledge of Hamdi’s conduct or status in Afghanistan.
In sum, the record provides no credible evidence supporting the Executive’s designation of Hamdi as an enemy combatant. Accordingly, a court has no basis upon which to perform its constitutional duty “ ‘to examine’ ” the “ ‘validity’ ” of the “ ‘reason’ ” for Hamdi’s “ ‘commitment.’ ” See Ex parte Merryman, 17 F.Cas. 144, 150 (C.C.Md.1861) (noting “ ‘the absolute necessity of expressing upon every commitment the reason for which it is made, [and] that the court, upon a habeas corpus, may examine into its validity’ ” (quoting 3 Blackstone, Commentaries 133, 134)). Thus, although the panel steadfastly maintains that it engages in a “meaningful judicial review,” see Hamdi, 316 F.3d at 462, 473, its rubberstamp of the Executive’s unsupported designation lacks both the procedural and substantive content of such review.[5]
*374 At the same time, I hasten to note that the total inadequacy of the Executive’s proffer and the panel’s review here does not provide license for a searching judicial inquiry into the factual circumstances of every detainee’s capture, or require compliance with a production order as demanding as that called for by the district court.[6] Such an approach could hamper the Executive’s ability to wage war, as the panel explains at length. See Hamdi, 316 F.3d at 469-473. But the possibility, no matter how real, that an improperly conducted judicial inquiry could impair the Executive’s ability to wage war cannot, as the panel seems to believe, provide a justification for holding that the Executive can indefinitely detain an American citizen (even one captured in a zone of active hostilities) without producing any credible evidence that the citizen is an “enemy combatant.” The Constitution gives Congress, not the Executive and not the courts, the power to suspend the writ of habeas corpus when the public safety requires it. U.S. Const. art. I, § 9. Absent a suspension of the writ, the Constitution demands that we strike the proper balance between ensuring the Executive’s ability to wage war effectively and protecting the individual rights guaranteed to all American citizens. See Yamashita, 327 U.S. at 8, 66 S.Ct. 340. Without such a balance, our system of ordered liberty will indeed ring hollow.
Thus, in contrast to the panel’s holding, which effectively transforms the asserted “fact” of being captured in a zone of active hostilities into an irrebuttable presumption of “enemy combatant” status,[7] a court could regard such a “fact” as creating a rebuttable presumption, thereby shifting the burden to Hamdi (and others like him) to establish that he was not an “enemy combatant.” The burden of persuasion would then be on Hamdi, with the aid of counsel, to proffer affirmative evidence of his “non-combatant” status. This would seem to be the course dictated by precedent.
Alternatively, if the Executive produced the “relevant records and reports” on *375 which Mr. Mobbs relied in making his declaration, a court might be able to assure itself of the legitimacy of the Executive’s designation. (Of course, the possibility that the “relevant records” pertaining to Hamdi’s detention might contain no evidence that he was an “enemy combatant” is precisely the reason why judicial review is necessary.) The Department of Defense - has obviously already compiled and collected these records. Producing them for judicial review, ex parte and in camera if necessary, would not in any way hamper the Executive’s ability to wage war. Indeed, the Executive has apparently already made similar productions in other cases. See Padilla v. Bush, 233 F.Supp.2d 564, 608 (S.D.N.Y.2002); United States v. Lindh, 212 F.Supp.2d 541 (E.D.Va.2002). Such evidence might suffice to substantiate the Executive’s designation.[8]
But in all events, the Executive must offer more than hearsay to support that designation; and so in answer to the question certified to us — “[wjhether the Mobbs Declaration, standing alone, is sufficient as a matter of law to allow a meaningful judicial review of Yasser Esam Hamdi’s classification as an enemy combatant?”— the answer must be, “No.”
III.
In conclusion, I must note that I have no doubt that, in this time of great challenge for our Nation, the Executive has acted in good faith when designating Hamdi an enemy combatant. Under our Constitution, however, it is the responsibility of the courts to ensure that American citizens are not deprived of liberty without due process of law, regardless of the personal belief of any individual judge concerning the integrity of the Executive. As the Framers well understood, the Executive branch must be subjected to checks on its power if individual liberties are to be preserved. See Duncan, 327 U.S. at 322-23, 66 S.Ct. 606; see also United States v. Robel, 389 U.S. 258, 264, 88 S.Ct. 419, 19 L.Ed.2d 508 (1967).
But one need not refer back to the time of the Framers to understand that courts must be vigilant in guarding Constitutional freedoms, perhaps never more so than in time of war. We must not forget the lesson of Korematsu, a case in which the Supreme Court sanctioned the military internment of thousands of American citizens of Japanese ancestry ■ during World War II. See 323 U.S. at 219, 65 S.Ct. 193. In its deference to an Executive report that, like the Mobbs declaration, was filed by a member of the Executive associated with the military and which purported to explain the Executive’s actions, the Court upheld the Executive’s conviction of Kore-matsu for simply remaining in his home, in violation of the military internment order. See id. at 215-16, 65 S.Ct. 193.
Of course, history has long since rejected the Korematsu holding. Indeed, Congress itself has specifically repudiated Korematsu, recognizing that “a grave injustice was done to” those “of Japanese ancestry by th[e] actions ... carried out without adequate security reasons and ... motivated largely by racial prejudice, wartime hysteria, and a failure of political leadership.” 50 App. U.S.C.A. § 1989a(a) (West 1990). But in truth, here, as in Korematsu, the Executive has failed to *376 proffer any real evidence to justify its action. When presented with no basis for reviewing the Executive’s designation that an American citizen is an enemy combatant, other than the assurance of a Defense Department “advisor” that someone in the United States military made this determination, a court must demand more. Cf. Korematsu, 323 U.S. at 245, 65 S.Ct. 193 (Jackson, J., dissenting) (“So the Court, having no real evidence before it, has no choice but to accept General DeWitt’s own unsworn, self-serving statement, untested by any cross-examination”).
The Executive’s treatment of Hamdi threatens the freedoms we all cherish, but the panel’s opinion sustaining the Executive’s action constitutes an even greater and “more subtle blow to liberty.” Id. at 245-46, 65 S.Ct. 193 (Jackson, J., dissenting). For although the incommunicado imprisonment of Hamdi will hopefully terminate some day, the panel opinion rationalizing this imprisonment will live on. As Justice Jackson warned, when the Executive “overstep[s] the bounds of constitutionality, ... it is an incident,” but when a court “review[s] and approve[s], that passing incident becomes the doctrine.” Id. at 246, 65 S.Ct. 193.
Courts have no higher duty than protection of the individual freedoms guaranteed by our Constitution. This is especially true in time of war, when our carefully crafted system of checks and balances must accommodate the vital needs of national security while guarding the liberties the Constitution promises all citizens. See id. at 234, 65 S.Ct. 193 (Murphy, J., dissenting) (“Individuals must not be left impoverished of their constitutional rights on a plea of military necessity that has neither substance nor support.”). I believe that our court has failed in this case to carry out this most important responsibility. I would require a greater showing from the Executive before I would permit an American citizen, held in the United States, to be imprisoned indefinitely, without ever being afforded the opportunity to appear in court, contest the allegations against him, or consult with a lawyer.
It is for all of these reasons that I respectfully dissent from the court’s denial of rehearing en bane.[9]

. Judge Wilkinson contends in his concurrence to the order denying rehearing en banc that these cases do not apply to Hamdi because he is an enemy combatant who is not entitled to rights "enjoyed by ordinary civil or criminal litigants.” See ante at 342 n. 2. This reasoning is dizzyingly circular. The panel relied heavily on an admission of Hamdi’s next friend (who had no opportunity to consult with Hamdi) to find Hamdi an enemy combatant. Now, Judge Wilkinson maintains that because Hamdi is an enemy combatant, White and Kingsbury do not apply, and Hamdi is bound by his next friend's assertedly critical admission. Id. Thus, Judge Wilkinson seeks to use the panel's conclusion (that Ham- *372 di is an enemy combatant) to justify the panel’s improper reliance on an admission of Hamdi’s next friend, which provides the very basis for that conclusion. In sum, according to Judge Wilkinson, because Hamdi's next friend made a purportedly devastating admission, Hamdi forfeits all rights to challenge that admission, and ultimately all constitutional rights. Surely this does not constitute the "meaningful judicial review" that the panel promised. See Hamdi, 316 F.3d at 462, 473.
Nor does the district court opinion, Hall v. Hague, 34 F.R.D. 449 (D.Md.1964), relied on by Judge Traxler in his concurrence, ante at 350, offer support for the panel's startling approach. In Hall, a district judge merely determined that the guardian ad litem of a minor could admit certain housekeeping matters prior to trial, on the understanding that "[a]f the trial, the judge will be able to tell if any unjustified admissions have been made and take appropriate action." Id. at 449-50 (internal quotation marks and citation omitted) (emphasis added). This is a long way from holding, as the panel does (ignoring Kingsbury and White), that a statement in a petition filed by Hamdi’s next friend constitutes an admission by Hamdi providing the basis for denial of his constitutional rights and indefinite imprisonment, without the benefit of any trial. Indeed, Judge Traxler's assertion that "there is no reason to believe that [Hamdi’s] rights are being bargained away or that a factual mistake is being made,” in the next friend petition, ante at 349 n. 7, ignores the obvious. How could there be any "reason to believe that rights are being bargained away or that á factual mistake is being made” when the only person who could offer such a reason or contest a factual mistake — Yaser Esam Hamdi — has never been given the chance to do so? By keeping Hamdi imprisoned incommunicado, the Executive has denied him this opportunity. Thus, we simply have no idea whether his "rights are being bargained away” or "a factual mistake is being made.” It is precisely to avoid resolving an individual’s fate on such uncertain grounds that the Supreme Court has held that a next friend petition "cannot be excepted to for insufficiency, nor can any admission ... be binding.” White, 158 U.S. at 146, 15 S.Ct. 788.

. I note that in a letter to Senator Patrick Leahy, contained in the record, but ignored by the panel, Hamdi’s father, in fact, states that his son went to Afghanistan less than two months before September 11, 2001 to do "relief work,” was "trapped in Afghanistan once that military campaign began,” could not have received military training, and was never an enemy combatant. J.A. 153-54.

. I find puzzling the contention that the panel opinion "does not speak to the issue of whether an ‘enemy combatant’ may challenge the government's claim that the former Yugoslavia, the Philippines, or Korea is a zone of active military operations,” ante at 354-355. First, no basis is provided for distinguishing between the "troops ... still on the ground in Afghanistan,” Hamdi, 316 F.3d at 476, and American troops "on the ground” in the former Yugoslavia, the Philippines, or Korea. Moreover, in suggesting that a person detained in one of those countries might be able to challenge the Executive's designation of that country as a zone of active military oper *373 ations, the concurrence necessarily implies that the question of what constitutes such a zone is justiciable — a conclusion seemingly at odds not only with the panel opinion, see 316 F.3d at 476 (dismissing Hamdi’s contention that hostilities in Afghanistan had ended), but also with the concurrence itself. See ante at 351-352 n. 9.

. The panel twice details the statements made in the Mobbs declaration, Hamdi, 316 F.3d at 461 and 472, and the Executive forcefully contends that the declaration meets the "some evidence” standard, but the panel carefully refrains from so holding. Id. at 474.

. Moreover, while I applaud the panel’s attempt to confine its holding to the facts at hand, without effect on the rights of citizens captured on American territory, see Hamdi, 316 F.3d at 465, similar attempts to constrain judicial holdings have proved unavailing. As Justice Jackson recounted, despite the Supreme Court’s careful efforts to limit the scope of its holding in Hirabayashi v. United States, 320 U.S. 81, 63 S.Ct. 1375, 87 L.Ed. 1774 (1943), to the specific facts of that case, see id. at 101-02, 105, 63 S.Ct. 1375, the Court later determined that Hirabayashi dictated the holding in Korematsu v. United States, 323 U.S. 214, 218, 65 S.Ct. 193, 89 *374 L.Ed. 194 (1944). See id. at 247, 65 S.Ct. 193 (Jackson, J., dissenting) (“The Court is now saying that in Hirabayashi we did decide the very things we there said we were not deciding.’’). 1 fear that the panel may also have opened the door to the indefinite detention, without access to a lawyer or the courts, of any American citizen, even one captured on American soil, who the Executive designates an "enemy combatant,” as long as the Executive asserts that the area in which the citizen was detained was an "active combat zone,” and the detainee, deprived of access to courts and counsel, cannot dispute this fact.

. Although I agree -with the panel that the district court’s production order required too much, the experienced district judge should be commended nonetheless. For, during wartime and in the face of opposition by representatives of a President enjoying record popular support, the district judge has courageously attempted to provide the meaningful judicial review that the Constitution mandates, however unpopular the case.

. Notwithstanding Judge Traxler’s contention, nineteenth and early twentieth century takings cases do not support the panel’s de facto creation of this irrebuttable presumption to justify Hamdi’s indefinite imprisonment. Cf. ante at 351. Those cases, upholding the wartime destruction or seizure without compensation of property outside the United States, including property owned by U.S. citizens, do broadly note that ”[i]n war, all residents of [an] enemy country are enemies.” Lamar v. Browne, 92 U.S. 187, 194, 23 L.Ed. 650 (1875). But no liberty rights of U.S. citizens were at issue in any of those cases or their progeny. See, e.g., Juragua Iron Co. v. United States, 212 U.S. 297, 305-306, 29 S.Ct. 385, 53 L.Ed. 520 (1909); Lamar, 92 U.S. at 194. Indeed, the Supreme Court has never held that an American citizen becomes an "enemy” and can be deprived of his liberty rights solely by virtue of residing in an enemy country during wartime.

. In Padilla, now certified for interlocutory appeal to the Second Circuit, the district court ruled that it would apply the "some evidence” standard suggested by the Executive, once Padilla — with the assistance of counsel — “presents any facts he may wish to present to the court” regarding his designation as an enemy combatant. Padilla, 233 F.Supp.2d at 608, 610; Padilla v. Rumsfeld, 256 F.Supp.2d 218 (S.D.N.Y.2003) (granting government's motion to certify orders in case for interlocutory appeal).

. Contrary to Judge Wilkinson’s suggestion in his concurrence, I do not question that Articles I and II delegate decisions as to the conduct of war and national defense to the Executive and Legislative branches of our government, and that we owe deference to those decisions. But deference to the political branches does not compel the Judiciary to abdicate its own duty to protect the individual liberties guaranteed all citizens. My disagreement with the panel decision is that Hamdi has not received the meaningful judicial review to which the pane] acknowledges he is entitled. Such review is possible only if the Executive is required to substantiate its contentions that Hamdi is an enemy combatant with more than a declaration that the panel concedes is hearsay, inconsistent and incomplete. Even in the darkest days of World War II, after the devastating attack on Pearl Harbor, the Supreme Court recognized a greater role for the courts in safeguarding individual liberties than the panel now provides Hamdi. See, e.g., Quirin, 317 U.S. at 46, 63 S.Ct 2. After all, “[i]mplicit in the term ‘national defense' is the notion of defending those values and ideals which set the Nation apart.” Robel, 389 U.S. at 264, 88 S.Ct. 419. I regret that in the name of deference to the political branches’ preeminence in matters of war, the panel permits the subversion of the very liberties that make defense of this Country worthwhile.